23-9588, Gurchiani v. Garland. Counsel for the petitioner, if you would approach and make your appearance and proceed, please. Thank you, Your Honor, and may it please the Court, Griffin Rubin on behalf of Petitioner Timerey Gurchiani. Mr. Gurchiani has a strong case for asylum, and the Attorney General should grant his discretion, but that issue is not before the Court today. The court question presented is whether Mr. Gurchiani is eligible for asylum. Mr. Gurchiani is a dual citizen of the countries of Georgia and Russia. He entered the United States without inspection, seeking refuge from the reach of Vladimir Putin's totalitarian regime, as Mr. Gurchiani refused to be conscripted to proliferate human rights abuses against Ukraine on Russia's behalf. Without considering Mr. Gurchiani's asylum eligibility as to Russia, the BIA found him ineligible because he did not demonstrate his asylum eligibility as to Georgia. The BIA's determination rested solely on its own precedent, but the agency's precedent is an incorrect interpretation of Congress's clear and unambiguous definition of the word As the Second Circuit confirmed two years ago in Zepeda-Lopez, the INA only requires Mr. Gurchiani to demonstrate his asylum eligibility in Georgia or Russia. By requiring him to demonstrate asylum eligibility in Georgia and Russia, the BIA committed reversible legal error. That's an interesting issue. I enjoyed reading the Second Circuit decision, but my threshold question is, why do we get to any of that? I mean, until the supplemental reply brief, you said nothing about the government's continual beating on the drum, that you have waived all of those merits arguments. Why isn't that a problem? I mean, it seems to me that I don't see any reason why you haven't waived them. So explain to me, number one, explain to me why that's wrong. Number two, explain to me, even if you make a powerful argument now, why should I should even care, since you have not done anything up until the supplemental reply brief? Yes, thank you, Your Honor. The waiver argument that the government makes, read closely, pertains almost exclusively to the withholding of removal argument, and respectfully to the government, it's a sleight of hand. And a good one at that, but I want to point out what the argument they make is. At least as I read the argument, it appears to be, first, there are particular matters within the withholding of removal claim that have been waived, and of course, we contest this premise. Second, because of those particular waivers, the withholding of removal claim fails, and therefore, according to the government's logic, the asylum claim must fall as well. But respectfully, Your Honors, even if we assume, if I assume without conceding, that the withholding of removal claim has been defeated, that does not speak to the asylum claim. And why is that true? I mean, conventional wisdom is, if you can't make out withholding of removal, you can't make out asylum, and you know that you're contesting their arguments about waiver, well, you didn't contest them. You didn't contest them until your supplemental reply brief, which by our precedent is too late. But beyond that, go ahead and explain to me why the logic, this last point, that it eliminates your asylum claim, why doesn't that work? Yes, Your Honor. So to my understanding from the reading of this circuit's precedent, it's actually the other way around. A failure to demonstrate an asylum claim, therefore, precludes a withholding of removal claim, and that makes sense given the differing burdens on persecution. All right. Give me the case you were thinking of, because maybe I missed that day when I was looking at these immigration cases, because I'm pretty sure it's the reverse. Go ahead. Of course. Of course. And the way I phrase it is this. I believe the petitioner's name was Garcia something, and it's from 2022, but I'll direct the court to the Supreme Court's decision in INSP Cardozo-Fonseca in 1987, in which the Supreme Court clarified that the standard for withholding of removal differs from the standing of asylum on persecution. And what is it? It's a ponderance, right? For withholding of removal, it's clear probability, and for asylum, it is just a past persecution or well-founded fear. And in Cardozo-Fonseca, the majority gave an example, which has been reiterated in that Garcia case in 2022, that all there needs to be is a 10% objective fear of the persecution that either happened or upon return to that country. Just 10%. And so because it's a much lower threshold, that's why the asylum claim is not precluded by the withholding of removal claim. Where did you make that argument in the briefing, if you did, that the differing standards would yield in your favor? I believe it was addressed in supplemental briefing, Your Honor. And to the best of my memory, I wrote the brief nine months ago and have left the job and come back to it since. I believe it was covered in a part, I believe, in somewhere within the pages nine to 17 of the blue brief, I believe, Your Honors. To make the point more eloquently, if I may borrow Judge Wilkinson's words from the Fourth Circuit, this is from a case about the First Amendment and intermediate versus strict scrutiny, but I've adapted it to apply here. Since the persecution standard for asylum is less onerous than that of withholding of removal, an application failing the asylum standard would also fail the withholding of removal standard. After all, if you can't ski a blue run successfully, you obviously can't tackle a double black diamond. Yet, failing to navigate a treacherous course does not imply an inability to handle a gentler slope. Likewise, that an application fails the withholding of removal standard means little for how it would fare under the more lenient asylum standard. And that's what I'd submit to the court on that point. The more lenient asylum standard. Yes, Your Honor. Okay, if the asylum standard is more lenient, then why would not, it not be the case that if you cannot satisfy the higher standard, you cannot satisfy the lower one? Sure, so for instance, in the First Amendment context, just because a law that's challenged under the First Amendment does not satisfy strict scrutiny does not necessarily mean it fails intermediate scrutiny. But were it, because it's more lenient, but were it to fail intermediate scrutiny, then it certainly cannot meet strict scrutiny. All right, let's get out of the First Amendment context. Let me ask you this and let's play it out for a second. Let's assume for the moment that you are still in the game as it relates to the asylum argument. In other words, you indicated you're not conceding, but let's assume that the withholding removal argument is persuasive as it relates to it being off the table. As it relates to the asylum argument, then would your premise be that you're entitled to relief because on the plain reading of the statute, it contemplates one country being enough? In other words, the Second Circuit's analysis. Yes, Your Honor, with one caveat. It's not that my client would be entitled to asylum because that would be the second step. But there would have been error. But there would have been error and reversible legal error at that. That would be new 10th Circuit law. I believe so, Your Honor. And that would comport with the only published circuit case on this issue. I'm just confused from a public policy point of view on that. If you have dual citizenship outside the U.S., and there's always a preference to sending people back to their native country of citizenship if you can, why wouldn't a dual citizenship require that you prove you couldn't go back to either country? Even though if you had just one country, we do require that you couldn't go back to anywhere in that country. That is, you may have lived in the capital, but if you could go back in the rural area, it's OK. Given that strong preference, why doesn't that same analogy apply when you have a dual citizenship? It's not U.S. Sure. Your Honor, first, I think, and I may be wrong, but I believe part of what you're talking about is the withholding of a removal standard as opposed to the asylum standard. And I just want to make clear that on this point, I'm only making this argument as to   You're right. I was switching to withholding. But so if you want to wait and discuss that when you address withholding, it's your call. Of course. And when it comes to the policy argument, the Supreme Court, of course, has been clear that no matter how strong a policy argument, it cannot overcome the plain language of the text, which is what we're dealing with here. The Second Circuit in Zepeda-Lopez very clearly delineated why the text demonstrates only one country is necessary for asylum eligibility when you're a dual citizen. But if we want to specifically go into the policy matter, I think there's a professor at UConn who has been the primary author on this issue. And the main example he uses is the case of Soviet Jews from back in the day. Soviet Jews were able, technically, to claim their right of return to Israel. But they also wanted to potentially flee to the United States to escape political and religious persecution. That was considered when the definition of refugee was adopted in 1980, which is modeled on the UN Convention's definition of refugee. We're in conformance with that definition, but the United States Code, through Congress's enactment, provides even further protection. So that's why all refugees under the UN Convention's definition would be refugees under the U.S. Code, under 1101A.42a. But it cannot be said in reverse. Not all refugees under the United States Code would constitute refugees under the UN Convention. But as they explicitly define it as two countries, I mean, whatever country you're a citizen of, right? You can't, you have to establish asylum standard as it relates to both those countries. Under the UN Convention definition, yes, Your Honor. And that's a distinct, you know, that's something that the court in Zepeda-Lopez discussed. And if I may, with just a little bit of time left, I know that there's been a sea change in administrative law since June when Loper-Bright came down. But I wanted to, of course, highlight for the court what hasn't changed. What has not changed is first, the text of the statute at issue. And second, under the Chevron regime or under the forthcoming Loper-Bright regime, the government has not articulated why we move past the first step. And that is to examine the plain text of the statute and determine whether there are any ambiguities. They have not offered any compelling or substantive argument other than it could be. But the evidence strongly weighs in favor of the way that Zepeda-Lopez came out and as we have argued in our briefs. But furthermore, in their supplemental response brief, the government turns to Skidmore. And they parse some language from Loper-Bright and claim that Skidmore is just going to replace Chevron effectively. And with due respect to my friend on the other side, Skidmore is not going to exhume Chevron. The one case that they cite from the Tenth Circuit, which I believe is the McGraw case on page 5 of their supplemental brief, the government cites that case to say, well, Skidmore applies even when you're interpreting statutes irrespective of ambiguity or lack of clarity. But oddly enough, in a forthcoming piece by Professor Kristen Hickman in the Duke Law Journal Online, she actually cited that case to suggest the exact opposite. To say that this circuit has potentially already spoken and said, there must be an ambiguity in the authority being interpreted to invoke Skidmore at all. And even if that weren't the case, by Professor Hickman's count, at least three circuits have already explicitly stated that Skidmore only applies in the presence of ambiguity. And that would be the Second, Third, and Eighth. And then at least four circuits have traditionally and conventionally applied Skidmore only in certain situations in which there is ambiguity. And so that would be the Fifth, the Ninth, the Federal Circuit, and the D.C. Circuit. Last, if I may, in my short remaining time, just to touch on the withholding of removal claim. Again, I think we've talked about waiver, and we are where we are on that. What is the finding that you concede is waived, or if you do concede is waived for the withholding? Candidly, Your Honor, I don't see anything as waived, at least as to a finding of effect. How is Nexus preserved? So Nexus is preserved because this is a very odd and, frankly, not very well developed area of jurisprudence. The inhuman conduct exception to conscription, in this matter, it's been stated as a part of a particularized social group. In other courts, it has gone to other statutorily protected factors, such as— Well, your argument sounds like a basis for destabilizing Nexus. But you didn't make the argument. I think with respect, Your Honor, I believe it's on page 18 or 19 of the blue brief. I can recall pointing at least to a BIA precedent that explicitly states in rare instances the inhuman conduct exception to conscription. It's kind of unclear whether it's tethered to all five, tethered to none, stands on its own. It's not quite—I'm not quite sure. But nevertheless, the BIA itself has said that the indication of this inhuman conduct exception in the rare instances in which it will apply very well may—covers the Nexus issue that we have here. You know, that is such a broad issue. I must say, I kind of worry that that could just be used to attack foreign policy of every country on a whole lot of things. I mean, it's really kind of a—unless there's a good way to cabin that, I'm apprehensive about expanding it. And certainly, Your Honor, and I don't want to suggest that I have any Tenth Circuit case law that says what the BIA has said on that front. I think the BIA is probably the right place for that to occur, since it's the attorney general. The attorney general speaks for the president on these matters under USC 1103. But I see I'm out of time. Now, continue, because I do have a question. But on the inhumane conduct, irrespective of where it legally fits into the picture, isn't it the case that if you didn't challenge the underlying BIA determinations, you know, like the fact that he was not persecuted in Russia, the fact that he—oh, more to the point, that he didn't show that anybody would kidnap him in Georgia and take him to Russia, nobody—he didn't show that Russia would force him to join the Russian military. He didn't show all of these things. And if he didn't show all of these things, irrespective of whether the BIA should have directly addressed the inhumane conduct allegation, isn't any error of that regard harmless? Because you didn't address the underlying factual findings that would gut any argument for inhumane conduct. Well, so, Your Honor, understandably, this court's precedent says that substantial evidence is what this court applies in— when it comes to things like do a certain set of facts demonstrate persecution or anything like that. And that's over a vigorous circuit split. And the BIA itself reviews those determinations de novo. But this court, understandably, and current under this precedent, does so under substantial evidence. But that, respectfully, is not what's at issue. There's a distinction between reviewing whether certain facts give rise to the findings of fact made by the BIA or confirmed by the BIA, as opposed to a wholesale application of an incorrect legal standard from the outset. And so that's the difference, I would say. And by wholesale incorrect legal standard, it's my understanding that what you're saying is, Well, look, the BIA did not take into consideration, didn't explicitly mention the inhumane conduct exception or wherever it fits. That's your contention, right? In part, yes, Your Honor. Okay. BIA didn't mention it. That's error. I guess what I'm saying is if the findings that the BIA did make, if they stand unchallenged, then any error in not uttering the words inhumane conduct, how can that possibly be grounds for granting relief? Because there would be no harm. Sure. And so I just want to make sure that we're centered in on the withholding of removal claim only on this point. Yes, sir. And as to that, what I would point the court to, I believe it's cited, again, I'm going to say somewhere between pages 17 and 21 of the blue brief, where the Third Circuit in the Cabinda case talked about how this inhuman conduct exception goes both to past persecution and future persecution. And candidly, Your Honors, this inhuman conduct exception was not some footnote that was dropped just very briefly in our brief before the BIA. That's not my point. My point is even if I assume that the BIA erred, why isn't that harmless error? Because all of the findings that would fatally undermine any claim of inhumane conduct have not been challenged. In other words, if you have not challenged that he wasn't forced to fight at all, in other words, you didn't challenge their claim that you didn't show he was forced to fight, if that is unchallenged, then a fortiori, you didn't challenge that he was forced to fight inhumanely, right? Yes, but being forced to fight is not what is necessarily inherent in the conscription standard. It can be about threats. You didn't challenge the conscription argument, right? I believe we did, Your Honor, but again, pages 17 through 21. I think we did challenge the BIA's understanding of conscription. And like in Cabinda, Cabinda says that this exception goes to both past persecution and for future persecution. So by failing to consider this exception, the entire persecution analysis for the withholding of a removal claim has been tainted. Okay. If my count— I have one more question. Oh, yes, please, go ahead. I wanted to return to this withholding and asylum are different standards position, assuming it's in the case because I didn't see you brief it, but I will return and look. If we read the no nexus finding from the BIA as dispositive of your withholding claim, your position is no, my asylum claim is still alive, correct? Correct, Your Honor. Okay. And then don't we have to look at the nature of the finding on nexus to see how it plays out in the asylum context? And what I mean by that is it's not just that it has to be legally available. It has to be available on the facts. And the—not the district court, I apologize. The BIA here concluded that there was no nexus evidence at all. What I'm trying to ask you about is why the standards, the legal standards matter when the finding is that there is no evidence, not some evidence that may satisfy a lower standard, but no evidence at all. Well, and candidly, I want to be clear that on this record, you know, this is challenging because, you know, we're looking at the BIA order. But if we go back down to what the immigration judge did, because the immigration judge framed the asylum case, the claim for asylum as—if you read the transcript, you can see there was no time of day given for my client to develop his story about asylum as to Russia. And so that's what— The evidence would have been different? The nexus evidence would have been different? I was not counsel during the IJ hearing. He was pro se at the time, so I can't speak specifically to that. But on the record that's before this court, I would say that there is a strong possibility that had the IJ given due consideration to—under the proper legal standard for asylum, these issues, even including nexus, would have been better fleshed out. Boy, that is a question of speculation from this record. I mean, that's getting us pretty deep into speculation of whether there was time on a matter which the record isn't even very clear. Sure, Your Honor. And I'm going to make the arguments that I have respectfully. And on top of that, if this were any normal matter, I may not. But we're talking about a man's life. Unfortunately, my client has already been removed back to Georgia after much protestation. The government was ready to ship him back to Russia. We had to get the embassy involved. This is a man's life, and so respectfully, I'm going to make every argument that I can. But he's in Georgia now? At the moment, yes, Your Honor. Okay, thank you. All right. Thank you, counsel. Thank you, Your Honor. We have been very liberal with your opposing counsel, and I will take that in consideration as the argument flows with you. Thank you. Please make your appearance and proceed. Good morning. May it please the Court. Vanessa Otero on behalf of the Attorney General. Your Honors, this Court has one distinct path to disposing of this petition for review, and that's the application of the Waiver Doctrine. The application of what? The Waiver Doctrine. The Board denied Petitioner's claim for withholding a removal for five independent reasons, one of which is that he didn't show past persecution in Russia or Georgia, and that he didn't show future persecution in Georgia or Russia as well. Petitioner hasn't challenged any of those five independent grounds whatsoever. Instead, in his opening brief, he raises three arguments only, none of which this Court has to address. And let me hit the pause button there. The key thing that is being asserted today is that irrespective of what happens with his withholding of removal arguments, his asylum claim continues on. That is what I want to hear your response to now, because he's saying that, you know, even though he didn't concede it, he's saying that even if the withholding of removal goes away because of this reason of not challenging findings, that does not undermine the soundness of his asylum claim. And I know in your brief you said that it did, but please amplify for me why that would be the case. It would be the case because even if this Court were to remand this matter back to the Board, we already know what the Board thinks about the facts of this case and how it would render a ruling on his asylum claim. So it said you didn't show past persecution in Russia. The harm you suffered didn't rise to the level of persecution. That would be the same. That's the same for asylum as it is for withholding of removal. Those standards are not different. Then it said you didn't show past persecution in Russia on account of a protected ground. That would be the same for an asylum claim. Those standards are no different there. The only difference in the standards between asylum and withholding comes to the forward-looking claim, the future persecution claim. Now in this case in particular, the agency applied the lower standard. They didn't really even apply the withholding of removal standard. They said you didn't show an objectively reasonable fear of persecution in Georgia or Russia. An objectively reasonable fear standard is what's generally applied in asylum cases, and I think what the Board and the immigration judge were doing here was just applying the lower standard as they normally do. They render a decision on asylum and say, okay, you haven't, you know, satisfied your burden under asylum. Therefore, you're not going to satisfy your burden under withholding only for the future persecution because if you don't show objectively reasonable fear, you're never going to show clear probability of fear. So our position is that it doesn't really matter if this matter goes back down to the Board. The Board is going to come to the same conclusions just in the asylum context, which is very similar to withholding a removal context. And help me characterize what that argument is. I mean, you say it doesn't really matter. Okay, as a practical matter, it may not matter, but I mean, what sort of legal construct do you put on that? Do we say that it's not a matter of futility? Is it a question that remand is not appropriate because? I mean, even if the BIA erred under asylum, any error would be harmless because he would lose anyway. What sort of way does this decision write? I mean, what does that look like? It's not just it doesn't really matter. I don't think that makes for an eloquent line in the opinion. So how does this write? I apologize. I didn't mean to be flippant or anything. You're not. Go ahead, please. I think it is a futility argument. Withholding of removal and asylum are so similar, as I've said. So the whole purpose of remanding on petitioner's arguments and what he's presenting to the court, it would be unnecessary to the results of this petition for review. You think it makes it moot, the other issue moot? Are you making a mootness argument? A mootness argument, yes, but also I'd like to cite the court to Mural v. Shalala, this court's president, in which it said, a litigant's failure to challenge an agency finding that's an independent basis for denial of relief forecloses the success of the petitioner review, despite the merits of an alternative argument. But that's as to the withholding claim. He has an independent asylum claim. I think that you need to explain, or it would be helpful if you could explain, what is it about the BIA's conclusion that is dispositive of the asylum claim? And that's what I'm trying to trace out. Is it, would the argument be, I mean, we now have talked about futility. Would the argument be that, you know, he's made this discreet asylum argument, the one based upon dual nationality. Would the argument be, even if he did prevail on that, even if he did prevail on that, he would lose anyway? In other words, that or any error that the BIA made on that would be harmless because of the findings that have been unchallenged that we've been talking about. I'm just trying to sort it out. I mean, that's my best shot. Tell me, is that right or wrong? No, no, no, you're absolutely correct. What would be dispositive of asylum is the board's findings on past persecution. Those would be dispositive of his past persecution claim from Russia. He didn't raise a past persecution claim from Georgia, so that's not relevant. And then the future persecution, the no objectively reasonable fear of persecution in Georgia or Russia would also be dispositive of his asylum claim. And is that because the evidence would be the same? Yes. Even though the standards are different? The standard is only different for the future persecution. And like I said, the board here applied the lower asylum standard when it analyzed his future persecution claim from both countries. Did you make that argument in your brief? I'm curious. I don't remember seeing this idea that there was sort of this threshold error about the standard. Oh, I don't think it's a threshold error. I think that we didn't make this specific argument, but we did. Okay, but you're maybe not an error, but your reading of what the BIA did now sounds a little different than what was presented in your brief. Well, we analyzed it under the objectively reasonable standard in our brief, and we said substantial evidence supports it. We did that as an alternative argument, and just looking upon it further, it made me realize, oh, well, they actually did apply the lower standard and then came to the conclusion, well, this is a clear probability of future persecution. But if the standards are different, why is it just plainly unfair to not remand this and allow the petitioner to present evidence under the operative claim, under the correct legal standard? Because the standards are not that different. They're different. Maybe they're not that different, but they're different. And he was pro se before. The evidence wasn't perhaps developed in the way that it needed to have been had only asylum been on the table. Well, his argument about the evidence not being developed, that would go to his due process claim, which he also waived. He's never brought that before this court. And he brought it up here at argument for the first time. Again, I'm not sure why the board disposed of it, but he never appealed that in his opening brief. Like I said, he only raised three different arguments. And you're saying the BIA applied the lower threshold standard that would apply for asylum anyway. In other words, in conducting its analysis and determining that there was no nexus, it applied that standard anyway, right? Well, the no nexus doesn't have to do with the objectively reasonable fear.  Objectively reasonable fear. Regardless, at the end of the day, its decision is saying there's just not enough evidence. So it doesn't really matter if you're applying objectively reasonable possibility. It actually matters a lot, I think. Not enough evidence is really different from no evidence. And I think for your position to be successful on this record, the BIA has to have said there's no evidence, not parsing it. What's your reading of the record? That's what it said. There's no evidence.  Yes. So we have to read the record that categorically so that there's no room for any sort of development of the record that could potentially change the result on the asylum claim, right? Correct. There's no evidence. He didn't present any evidence, whether subjectively reasonable or not, of what's going to happen to him when he returns. Future persecution. When he returns where? Well, to Georgia or to Russia. And in this particular case, his overall claim is, I'm going to be kidnapped in Georgia, taken over by unknown persons that he couldn't identify. That's in his testimony. And then forced to serve. That's his claim. He didn't show any evidence of that. And that's what the agency found. I didn't see any. I mean, I didn't see any evidence of that. And you're representing there is none.  Of a risk of kidnapping in Georgia, that is, that Russia wants him bad enough that they'll figure out a way to kidnap him. Correct. His testimony was that the IJ asked him, well, who's going to kidnap you in Georgia? And I think he said something along the lines of, I can't identify, I don't know who the people would be. So if he can't even satisfy the first step of that chain of events, then the rest sort of falls apart. Right. Thank you. If the court has any further questions. I do not.  Thank you for your time. Case is submitted. Thank you for your arguments, counsel.